UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LO SAMONTRY,

                    Petitioner,                    Case No. C26-1367-SKV

        v.

BRUCE SCOTT, *et al*.,                      ORDER GRANTING PETITION FOR
                                            WRIT OF HABEAS CORPUS

                    Respondents.

Petitioner Lo Samontry is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody, as well as declaratory and injunctive relief. *See* Dkts. 1, 9. Also before the Court is Petitioner's motion for temporary restraining order ("TRO"). Dkt. 2. Petitioner's counsel, Benjamin Cornell, submitted a declaration in support of Petitioner's petition and motion for TRO. Dkt. 8. Respondents filed a timely return opposing Petitioner's request for federal habeas relief and his motion for TRO (Dkt. 10), together with supporting declarations from ICE Deportation Officer Harold Britt, Jr. (Dkt. 11), and Respondents' counsel Alixandria

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 1

K. Morris (Dkt. 12).  Petitioner filed a traverse to the return.  Dkt. 13.[1]

The Court, having reviewed the parties' submissions and the governing law, GRANTS in part Petitioner's amended petition for writ of habeas corpus (Dkt. 9) and DENIES Petitioner's motion for TRO (Dkt. 2).

## I.    BACKGROUND

Petitioner was born in Laos in 1968, though he claims to hold no birth certificate or evidence of Lao citizenship.  *See* Dkt. 9 at 2, ¶ 1; Dkt. 12, Ex. 2 at 1.  Petitioner entered the United States as a refugee in February 1981 and adjusted to lawful permanent resident ("LPR") status in June 1982.  *See* Dkt. 11, ¶ 4.

In 2000, Petitioner was convicted in Oregon of attempted assault in the second degree and sentenced to 18 months imprisonment.  *See* Dkt. 9 at 2, ¶ 4; Dkt. 11, ¶ 5.  On July 12, 2001, the legacy Immigration and Naturalization Service ("INS") served Petitioner with a Warrant for Arrest of Alien and a Notice of Custody Determination and placed him in immigration custody.  Dkt. 11, ¶ 6.  On the same day, INS served Petitioner with a Notice to Appear ("NTA") charging him as removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43).  *Id*., ¶ 7.  Petitioner, who proceeded *pro se* in his subsequent removal proceedings, did not file any applications for relief from removal and, on August 7, 2001, an immigration judge ("IJ") ordered he be removed to Laos.[2]  *Id.*, ¶ 8; Dkt. 8-

---

[1] Petitioner filed with his traverse a motion for relief from deadline as the brief was filed two days beyond the deadline established in the Court's Scheduling Order.  *See* Dkts. 5, 14.  It does not appear Respondents will suffer any prejudice as a result of Petitioner's delay and the Court therefore GRANTS his motion for relief from deadline.  Dkt. 14.

[2] According to Petitioner, he was told during his immigration proceedings that if he agreed to be deported, he would not be sent to Laos and could be released from custody.  *See* Dkt. 8-1 at 31, ¶ 14.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 2

1 at 31, ¶ 13; Dkt. 12, Ex. 3.  Petitioner waived appeal and the removal order therefore became final on the date it was issued.  *See id.*

On December 3, 2001, INS released Petitioner on an Order of Supervision ("OSUP") pending his removal.  Dkt. 11, ¶ 9.  ICE's Office of Enforcement and Removal Operations ("ERO") issued a new OSUP on March 1, 2005, and another new OSUP on May 28, 2009.  *Id.*, ¶¶ 10-11; Dkt. 12, Ex. 4.

On January 30, 2026, the Lao People's Democratic Republic ("PDR") issued a "Laissez-Passer" for Petitioner, a document that allows an individual to enter the PDR for a single journey only.  *See* Dkt. 12, Ex. 6.  The travel document was received by Portland ERO on February 13, 2026, and it had an expiration date of April 30, 2026, 90 days from the date of issuance.  *See* Dkt. 11, ¶ 12.

On March 23, 2026, the Department of Homeland Security sent Petitioner a letter directing him to report to ICE's Portland's Field Office on April 13, 2026, to discuss the status of his case and "to serve documentation."  Dkt. 8-1 at 52.  According to Petitioner, he assumed the purpose of the check-in was to update ICE on his current address, something he had been doing annually for approximately 25 years.  Dkt. 8-4 at 3, ¶ 3.  However, shortly after checking in at the Portland Field Office, Petitioner was called to a secure room and handcuffed.  *Id.*, ¶¶ 4-5.

Officer Britt avers that when Petitioner appeared on April 13, 2026, ERO served him with a Notice to Alien of Revocation of Release and a Notice of Imminent Removal.[3]  Dkt. 11, ¶ 13.  Officer Britt also avers that ERO conducted an informal interview the same day at which Petitioner provided no written statement nor any documents.  *Id.*  According to Officer Britt,

---

[3] It is unclear whether the Notice of Imminent Removal was actually served on Petitioner as the document supplied by Respondents is accompanied by a proof of service form which references a different document, *i.e.,* a Notice to Alien of File Custody Review.  *See* Dkt. 12, Ex. 5 at 5-6.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 3

ERO had scheduled Petitioner's removal to take place before April 30, 2026. *Id.* After being processed at the Portland Field Office, Petitioner was transferred to NWIPC where he remains. *Id.*; Dkt. 8-4 at 3-4, ¶¶ 7-8.

Petitioner describes the events of April 13, 2026, somewhat differently. According to Petitioner, it was never clearly communicated to him that his OSUP was being revoked, and he is "fairly certain" he was not served with copies of any documents. Dkt. 8-4 at 3, ¶¶ 6-7. Petitioner acknowledges he was told by an ICE agent that they had received authorization for him to return to Laos, but claims he was not shown any travel document. *Id.*, ¶ 7. Petitioner expresses uncertainty as to whether he was asked if he wanted to make a statement at the time he was re-detained. *Id.*, ¶ 6.

On April 15, 2026, ERO issued Petitioner a Warrant of Removal/Deportation and the following day ERO identified April 22, 2026, as Petitioner's removal date pending a ticketed itinerary. Dkt. 11, ¶¶ 14-15. On April 21, 2026, Petitioner, through counsel, filed motions to reopen his removal proceedings and for an emergency stay of removal with the Tacoma immigration court. *See* Dkts. 8-1, 8-2; Dkt. 11, ¶ 16. Petitioner argues in his motion to reopen that due to a change in the law and material circumstances, he is no longer removable as charged and he is eligible for cancellation of removal for permanent residents. *See* Dkt. 8-1. He further argues that changed country conditions in Laos render him eligible for asylum and withholding of removal. *Id.* On April 22, 2026, an IJ granted Petitioner's motion to stay his removal pending adjudication of his motion to reopen.[4] Dkt. 8-3.

---

[4] According to Petitioner, he was removed from his "pod" at NWIPC on April 22, 2026, and was told he was going to travel to a staging location for his removal to Laos, but he was returned to the facility later the same day after the stay of removal was issued by the IJ. Dkt. 8-4 at 4, ¶ 8.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 4

On April 22, 2026, prior to receiving a response to his motion for a stay of removal from the immigration court, Petitioner filed the instant petition for writ of habeas corpus challenging his re-detention. *See* Dkt. 1. Petitioner filed with his petition a motion for TRO seeking immediate release from custody or, in the alternative, an order staying his removal and enjoining Respondents from moving him outside NWIPC. *See* Dkt. 2. The Court issued an Order provisionally granting Petitioner's motion for TRO on April 22, 2026, and directed that additional briefing on the motion be submitted in conjunction with Respondents' return and Petitioner's traverse. Dkt. 6. Petitioner filed an amended petition on April 30, 2026, challenging his re-detention as violative of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment and that is the operative petition in this action. Dkt. 9.

## II.     LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 5

### III.    DISCUSSION

Petitioner asserts in his APA claims (claims one and two) that revocation of his conditional release and his continuing detention constitute an abuse of discretion, and that revocation of his conditional release was not in accordance with law.  Dkt. 9 at 14-16.  Petitioner asserts in his third claim that his re-detention violates procedural due process, and he argues that, under *Mathews*,[5] the circumstances under which the Government revoked his liberty violated the Fifth Amendment.  *Id.* at 17-22.  Finally, Petitioner asserts that removal to Laos would violate his Fifth Amendment protections against punitive removal.  *Id.* at 22-27.

Respondents argue that Petitioner's re-detention complied with due process.[6]  Dkt. 10 at 10-13.  They also contend that Petitioner's punitive removal claim is without merit and exceeds this Court's jurisdiction, and that the Court lacks subject matter jurisdiction over Petitioner's APA claims.  *See id.* at 13-16.  Finally, Respondents contend that Petitioner has not demonstrated an entitlement to the relief he seeks by way of his motion for TRO.  *Id.* at 16-18.

### A.    Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands."  *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481

---

[5] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[6]  Respondents include in their return an argument that Petitioner's detention has not become indefinite (Dkt. 10 at 7-10), but Petitioner raises no such claim in his amended petition and the Court therefore need not address that argument.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 6

(1972)).  In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).  The Court applies the *Mathews* test.

The first *Mathews* factor considers "the private interest that will be affected by the official action."  *Mathews*, 424 U.S. at 335.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests").  The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

When Petitioner was released on an OSUP over two decades ago, he acquired a liberty interest protected by the Due Process Clause.  Dkt. 11, ¶ 9.  In the years since his release, Petitioner has checked in as required, has served as a parental figure for his younger siblings, has been actively involved with his family and community in Oregon, and has maintained a career as a welder, all of which demonstrate his reasonable reliance on, and the weight of, the acquired liberty interest.  *See* Dkt. 8-1 at 31-32, 47, 49-50, 105, 110.  In sum, Petitioner created a life for himself in Oregon, all the while believing he would never be deported to Laos.  *Id.* at 32.

Respondents appear to acknowledge that a noncitizen has a liberty interest in freedom from immigration detention, but they argue the interest is reduced when a noncitizen is subject to

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 7

a final, executable order of removal. Dkt. 10 at 11. Respondents further argue that because ICE did not detain Petitioner until it had secured a travel document for his removal to Laos, his interest in freedom from detention "is significantly reduced." *Id.* at 11.

While Petitioner was subject to an executable order of removal at the time he was re-detained, that is no longer the case as the travel document previously issued for him has expired and the immigration court has stayed his removal. Moreover, given Petitioner's lengthy tenure in the United States – over 45 years at this point – and his family and community ties here, there can be no question that the revocation of his OSUP inflicted a "grievous loss," thereby depriving him of a valuable private interest that is protected by the Due Process Clause. *See Morrissey*, 408 U.S. at 482. Accordingly, the first *Mathews* factor favors Petitioner.

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Respondents argue that because ICE did not detain Petitioner until it had secured a travel document for him, detaining him to facilitate his removal, even without a hearing, was not erroneous. Dkt. 10 at 12. Respondents further argue that the existing procedures governing OSUP revocation are constitutionally sufficient, and that Petitioner was provided all the process he was due under the regulations. *Id.* at 12-13.

The applicable regulation provides that ICE may revoke a noncitizen's release if the noncitizen violates the conditions of their release, or if changed circumstances create a significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. §§ 241.13(i)(1), (i)(2). The regulation further provides that "[u]pon revocation" of the noncitizen's release, the individual must be notified of the reasons for revocation and afforded "an initial informal

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 8

interview promptly after his or her return to Service custody" to "respond to the reasons for revocation" and "submit any evidence or information" in opposition.  8 C.F.R. § 241.13(i)(3).  The regulation also requires a "revocation custody review" that includes "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  *Id.*

There is conflicting evidence in the record regarding the degree to which ICE complied with the regulation in revoking Petitioner's OSUP.  However, the Court need not resolve those conflicts as, even assuming ICE provided Petitioner notice and an informal interview at the time of his re-detention, as required by the regulation, such minimal procedures were insufficient to afford Petitioner a meaningful opportunity to respond in the circumstances presented here.  Three weeks prior to his re-detention, ICE sent Petitioner a letter directing him to report to "discuss" his case and to "serve documentation."  Dkt. 8-1 at 52.  The letter made no mention of the fact that ICE had obtained a travel document for him or that it was making preparations for his removal to Laos.  *See id.*  Rather than illuminate the issues which might have allowed Petitioner to provide a meaningful response to his re-detention and anticipated removal, ICE obscured those issues.  Indeed, as Petitioner indicates in his materials, representations made by immigration officials during his removal proceedings and his multiple check-ins over the years, led him to believe he would never be deported to Laos.  Dkt. 8-1 at 32, ¶ 21.

It is difficult to discern how an individual who has lived in the country for 45 years, has made a life for himself here, and who believed he would never be removed, would be able to meaningfully respond to the threat of removal with no advance notice whatsoever.  Moreover, there is no reason to believe that, after almost 25 years of compliance with his OSUP, Petitioner would have failed to appear for removal had he been expressly directed to do so, and advance

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 9

notice would have allowed Petitioner to explore potential remedies as he has now done through his motion to reopen. Issues such as those raised in his motion to reopen, which go to the likelihood Petitioner will ultimately be removed, are relevant to the discretionary decision to re-detain when re-detention is based on changed circumstances and the foreseeability of removal.

In sum, while the regulations, as written, may afford some process to a noncitizen who is re-detained, they were insufficient in this instance. Additional process in the form of pre-deprivation notice and an opportunity to be heard before a neutral decisionmaker would have decreased the risk of an erroneous deprivation here. The second *Mathews* factor therefore favors Petitioner.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents argue that the government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal." Dkt. 10 at 12 (citing *Saelee v. Bondi*, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026).) Respondents further argue that the government's interest is even stronger where it has shown that removal is likely to occur in the reasonably foreseeable future. *Id.*

While the government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community," *Zadvydas*, 533 U.S. at 690, Respondents identify no concrete way in which providing advance notice and a pre-deprivation hearing before revoking an existing OSUP would materially impede those interests, especially in a case such as this. There appears to be no dispute that Petitioner has, for almost 25 years, shown up for his required check-ins and otherwise complied with the conditions of his

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 10

OSUP, and there is no evidence in the record suggesting that Petitioner, after almost a quarter century of compliance, has become a flight risk.

Moreover, custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Respondents have not identified any exigent circumstances that would have made a pre-deprivation process impracticable in this case. The third *Mathews* factor therefore favors Petitioner as well.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Respondents' re-detention of Petitioner without providing him "an opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333, violates the due process protections afforded him by the Constitution. As Petitioner has established that he is in custody in violation of the Constitution, he is entitled to habeas relief under § 2241. Petitioner must therefore be immediately released from custody.

**B.      Additional Claims**

Because the Court deems Petitioner's challenge to his re-detention dispositive, the Court does not address Petitioner's APA claims. The Court also declines to address Petitioner's claim alleging that his removal to Laos would be punitive (*see* Dkt. 9 at 22-27), as any relief relative to that claim would exceed this Court's jurisdiction. Petitioner was ordered removed to Laos in August 2001, and the removal order is currently final. *See* Dkt. 12, Ex. 3. Any request in this federal habeas action to restrict or overturn that order would fall within the constraints imposed by 8 U.S.C. § 1252(g), which provides that courts lack jurisdiction over claims "arising from the

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 11

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." The Ninth Circuit has held that challenges to the executive's exercise of discretion to execute a removal order are barred under § 1252(g). *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022). Any relief related to Petitioner's order of removal is properly pursued in the immigration courts, as Petitioner is currently doing. *See id.*

### C.  Motion for TRO

Petitioner, by way of his motion for TRO, seeks an order directing his immediate release from custody or, in the alternative, an order staying his removal and enjoining Respondents from moving him outside NWIPC. *See* Dkt. 2. It appears that motion is now moot in light of this Court's ruling on his underlying federal habeas petition and the immigration court's granting of his motion to stay his removal pending consideration of his motion to reopen removal proceedings. The Court therefore need not address the motion further.

### IV.  CONCLUSION

Based on the foregoing, the Court ORDERS:

(1)  Petitioner's amended petition for writ of habeas corpus (Dkt. 9) is GRANTED in part;

(2)  Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order subject to reasonable conditions of supervision;

(3)  Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**;

(4)  Petitioner's motion for a temporary restraining order (Dkt. 2) is DENIED as moot;

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 12

(5)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.  Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 29th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 13